**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SANDY CARTER                                    CIVIL ACTION NO.

VERSUS

                                                21-616-BAJ-EWD

DG LOUISIANA, LLC

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 30, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SANDY CARTER                                          CIVIL ACTION NO.

VERSUS

                                                     21-616-BAJ-EWD

DG LOUISIANA, LLC

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the Court is the Notice of Removal, filed by Defendant DG Louisiana, LLC ("DG Louisiana").[1]  Sandy Carter ("Plaintiff") has not filed a motion to remand; however, as DG Louisiana has not established the requisite amount in controversy required for subject matter jurisdiction, it is recommended[2] that this matter be remanded to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, *sua sponte*.

I.     **BACKGROUND**

This is a civil action involving claims for damages by Plaintiff based upon the injuries she allegedly sustained on May 19, 2020 when she slipped and fell in standing water on the floor at a Dollar General store in East Baton Rouge Parish, Louisiana, owned and/or operated by DG Louisiana (the "Accident").[3]   On April 22, 2021, Plaintiff filed her Petition for Damages ("Petition") against DG Louisiana, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[4]  On October 26, 2021, DG Louisiana removed the matter to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332.[5]  The Notice of Removal properly alleges that Plaintiff is domiciled in Louisiana and that DG Louisiana is a limited liability company, whose

---

[1] R. Doc. 1.
[2] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.")
[3] R. Doc. 1-2, ¶ 5.
[4] R. Doc. 1-2.
[5] R. Doc. 1, ¶¶ 6, 8 (sic, 7).

sole member, Dollar General Corporation, is a Tennessee corporation, with its principal place of business in Tennessee; therefore, complete diversity of citizenship exists.[6]

## II.    LAW AND ANALYSIS

### A.  Procedural History Relevant to the Amount in Controversy

The Petition only generally alleges that "Plaintiff's injuries required prompt medical attention, as well as ongoing medical treatment, prescription medication, physical therapy, all resulting in continued pain and suffering," for which Plaintiff seeks damages for past, present, and future: physical pain and suffering, mental anguish, physical disfigurement and impairment, medical expenses, lost wages and/or loss of future earning capacity, and pre- and post-judgment interest.[7]  Plaintiff did not demand a jury trial.[8]

In the Notice of Removal, DG Louisiana acknowledged that the Petition does not contain any information as to whether the amount in controversy requirement is met for federal jurisdiction.[9] Before removal, DG Louisiana propounded an interrogatory to Plaintiff requesting that she "Please state whether your alleged damages exceed $75,000, exclusive of interest and costs."  Plaintiff responded, as follows:

> Plaintiff objects to this Interrogatory on the grounds that it seeks information the determination of which is in the provenance of the trier of fact – in this case, a judge or a jury. Plaintiff seeks general damages for pain and suffering, etc., in an amount to be determined at trial.

---

[6] R. Doc. 1, ¶ 6(A)(1)-(2) and *see* R. Doc. 1-2, ¶ 1.

[7] R. Doc. 1-2, ¶¶ 7, 13.

[8] While a jury trial demand by Plaintiff would not be dispositive of the amount in controversy, it would be another piece of information to consider.  *See, e.g., Batiste v. Stryker Corp*., No. 19-574, 2020 WL 2245845, at *4 (M.D. La. April 22, 2020), *report and recommendation adopted*, No. 19-574, 2020 WL 2296892 (M.D. La. May 7, 2020) ("While this Court has repeatedly held that a demand for jury trial and a lack of Article 893 allegation are insufficient alone to establish amount in controversy, they are factors to be considered.")(citation omitted).

[9] R. Doc. 1, ¶ 2. DG Louisiana alleges that it filed an exception of vagueness in the state court due to Plaintiff's failure to include an La. Code Civ. Proc. Art. 893 statement in her Petition stating whether the amount in controversy was greater or less than $75,000  R. Doc. 1, ¶ 3.  From the record, it does not appear that the state court ruled on the exception prior to removal.

Case 3:21-cv-00616-BAJ-EWD    Document 17    12/30/22    Page 4 of 16

> Plaintiff further objects to this interrogatory as premature, as discovery is in its nascent stages and as plaintiff continues to seek medical treatment. Further, specifics regarding plaintiff's medical bills to date are best found in plaintiff's medical records. Plaintiff will identify any and all special damages in accordance with any court issued scheduling order. Plaintiff will supplement this response as discovery continues and records and documents are obtained.[10]

DG Louisiana admitted this response also fails to indicate whether the amount in controversy requirement is met.[11] However, DG Louisiana contended that three pages of Plaintiff's medical records establish that the amount in controversy is met because they reflect that Plaintiff: "has undergone a lumbar transforaminal epidural steroid injection ("ESI") and it has been recommended she undergo a cervical epidural steroid injection. The results of her cervical MRI reveal an alleged new onset of a central disc herniation at C4-5." According to DG Louisiana, the responses/records further reflect that Plaintiff had been actively treating "with little to no relief" of her injures for eighteen months since the date of the May 19, 2020 incident, and her medical expenses are approximately $17,248.[12]

The medical records and discovery responses confirmed that Plaintiff was diagnosed with spinal cord straightening and one herniated disc attributable to the Accident, for which she had been treated with one ESI, and that, at the time of her September 27, 2021 discovery responses, she was "still treating for her injuries."[13] However, conservative treatment, including one ESI over a period of eighteen months, and relatively minimal medial expenses, generally fail to establish

---

[10] R. Doc. 1, ¶ 4 *citing* R. Doc. 1-4, pp. 8, 10.
[11] R. Doc. 1, ¶ 4.
[12] R. Doc. 1, ¶¶ 4-5 *citing* R. Docs. 1-5 and R. Doc.1-6, *and see* R. Doc. 4, p. 5, September 27, 2021 response to interrogatory No. 14 ("Plaintiff is still treating for her injuries from this incident.")
[13] R. Doc. 1-4, p. 5, R. Doc. 1-5, R. Doc. 1-6 (one injection on July 30, 2021). The medical records and discovery responses submitted with the Notice of Removal reflect that Plaintiff was involved in at least two prior motor vehicle accidents and had two pre-existing disc bulges and a pre-existing herniated disc. R. Doc. 1-4, p. 6.

that the jurisdictional threshold is met.[14] The three records submitted with the Notice of Removal did not indicate that Plaintiff was recommended for future treatment; establish that Plaintiff's medical expenses totaled $17,248; or show that Plaintiff had been treating with little to no relief since the May 19, 2020 Accident, as represented by DG Louisiana.[15]

Furthermore, and despite DG Louisiana's contentions, the three pages of medical records somewhat contradict the position that Plaintiff's damages are likely to reach the jurisdictional minimum. After receiving the ESI in July 2021, Plaintiff reported minimal improvement and pain of "7" on a scale of "10," yet she also reported her pain was "well controlled with prescribed medications," her "current functional level is much improved with medication," her quality of sleep is fair, and her mood is good.[16]   Additionally, Plaintiff had only incurred $17,248 in medical expenses for eighteen months of alleged (but at that point, undocumented) ongoing treatment, and there was no documented recommendation for future medical treatment.

Plaintiff's responses to interrogatories identified injuries to her left elbow, upper and lower back, and stomach.[17]   Plaintiff contended that she suffers from "daily pain," including a burning sensation in her back and pain that travels down her back into her leg; has trouble sitting or standing for long periods; has trouble sleeping and laying down; has trouble using the restroom; and has frequent crying spells.[18]   However, these allegations were generalized and were not supported by any medical evidence of record. Because the information in the Notice of Removal and attached evidence was not sufficient to establish that Plaintiff's damages are likely to exceed $75,000,

---

[14] *See, e.g., Barrow v. James River Insurance Company*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1).

[15] *See* R. Docs. 1-5 and 1-6.  At the time of removal, the earliest date of treatment in the record was Plaintiff's November 18, 2020 MRI, which was six months post-Accident. R. Doc. 1-5, p. 1.  DG Louisiana subsequently produced additional records, *see below.*

[16] R. Doc. 1-6.

[17] R. Doc. 1-4, p. 2.

[18] R. Doc. 1-4, p. 2.

exclusive of interest and costs, DG Louisiana was ordered to file a memorandum and supporting evidence concerning the amount in controversy requirement of 28 U.S.C. § 1332, and Plaintiff was ordered to file either a Notice stating that Plaintiff did not dispute that DG Louisiana established the jurisdictional requirements of 28 U.S.C. § 1332, or a Motion to Remand.[19]

DG Louisiana attached additional medical records to its Memorandum Establishing Amount in Controversy ("Memorandum") that provide more details regarding Plaintiff's injuries and treatment, including treatment from the day after the Accident and treatment with additional providers, as well as medical bills, which are addressed below.[20] In response, Plaintiff filed a Notice Regarding Jurisdiction ("Notice"), contending that, in light of the Memorandum, medical records and bills, and Plaintiff's injuries, DG Louisiana satisfied the jurisdictional requirements of § 1332.[21]

### B. Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[22]  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[23]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[24]  The removal statute is strictly construed

---

[19] R. Doc. 5.
[20] R. Doc. 6 through R. Doc. 6-5.
[21] R. Doc. 9.
[22] 28 U.S.C. § 1441(a).
[23] 28 U.S.C. § 1332(a)-(a)(1).
[24] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

and any doubt as to the propriety of removal should be resolved in favor of remand.[25]   The removing party has the burden of proving federal diversity jurisdiction.[26]   Remand is proper if at any time the court lacks subject matter jurisdiction.[27]   The Court has a duty to raise the issue of jurisdiction *sua sponte*.[28] Because parties "cannot by stipulation or any other mechanism confer subject matter jurisdiction on the federal courts,"[29] the fact Plaintiff does not dispute that DG Louisiana has established the requisite amount in controversy is not controlling.

### C. DG Louisiana Has Failed to Establish that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[30]   When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.[31]   The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[32]   Once a removing defendant has

---

[25] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[A]ny doubt about the propriety of removal must be resolved in favor of remand."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.").

[26] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[27] *See* 28 U.S.C. § 1447(c).

[28] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

[29] *Hopkins v. Crown Assocs., LLC*, No. 18-595, 2018 WL 8496020, at *7 (M.D. La. Oct. 25, 2018), *report and recommendation adopted sub nom. Hopkins v. Crown Associated, LLC*, No. 18-595, 2019 WL 1199470 (M.D. La. Mar. 14, 2019) (citing *Occidental Chemical Corp. v. Saia Motor Freight Line, LLC*, No. 15-689, 2016 WL 6518668, at * 2 (M.D. La. Aug. 31, 2016) (citing 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.). *See also, Moore v. Office Depot, Inc.*, No. 10-400, 2010 WL 2671927, *2 at n. 4 (W.D. La. June 30, 2010) ("Although plaintiffs now do not contest that the amount in controversy exceeded $ 75,000 at the time of removal, the parties cannot confer federal subject matter jurisdiction via consent."); *Lehman v. Protective Ins. Co.*, No. 04-378, 2004 WL 744877, at *1 (E.D. La. April 6, 2004) ("The parties may neither consent to nor waive federal subject matter jurisdiction.") (citing *Simon v. Wal–Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999))).

[30] La. Code Civ. Proc. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[31] *Luckett*, 171 F.3d at 298, citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).

[32] *Luckett*, 171 F.3d at 298, quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

6

established, by a preponderance, that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[33]

As DG Louisiana acknowledges, and as noted in the Court's October 29, 2021 Notice and Order, it is not facially apparent from the Petition that Plaintiff's claims likely exceed the federal jurisdictional amount.[34] There are no allegations of specific injuries.[35] Plaintiff's demands for general categories of damages in the Petition (*e.g.*, past and future pain and suffering, mental anguish, lost wages and medical expenses), are insufficient to establish the amount in controversy (and Plaintiff's discovery responses clarified that Plaintiff is not seeking lost wages).[36] "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[37] Next, while the Petition generally alleges "physical disfigurement," Plaintiff's discovery responses state that Plaintiff is unaware of any disfigurement.[38] To the extent the Petition alleges "physical impairment," even allegations of permanent disability (which are not made here), standing alone with no specification as to the affected body part(s), do not establish that a plaintiff's claims are likely to satisfy the amount in controversy requirement.[39] Nor does the

[33] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).
[34] R. Doc. 1, ¶ 2 ("The Petition for Damages does not contain any information that would put Defendants on notice that the potential amount in controversy for this matter exceeds $75,000, exclusive of interest and costs."), and R. Doc. 5, pp. 3-4.
[35] R. Doc. 1-2.
[36] R. Doc. 1-4, p. 6.
[37] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012) and cited cases.
[38] R. Doc. 1-4, p. 2.
[39] R. Doc. 1-2, ¶ 13. *See Heaverlo v. Victoria's Secret Stores, LLC*, No. 07-7303, 2008 WL 425575, at *3 (E.D. La. Feb. 8, 2008) ("Although Mrs. Heaverlo alleges permanent disability, that allegation is not sufficient for the Court to retain this case. *In Palmer v. Wal–Mart Stores, Inc.*, No. 95–1723, 1996 WL 20862, at *1 (E.D. La. Jan. 17, 1996),

Petition provide any information regarding Plaintiff's claimed medical expenses, prescription medication, etc. "If the complaint is vague with regard to the types of injuries, medical expenses incurred, and future medical problems resulting from the incident, the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000."[40] Based on the foregoing, the amount in controversy is not facially apparent from the Petition.

Since it is not facially apparent from the Petition that Plaintiff's damages will exceed the federal jurisdictional amount, the Court must next consider whether DG Louisiana has met its burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000. DG Louisiana relies on Plaintiff's diagnosis of elbow, neck, and back injuries, including herniated discs, past medical expenses of approximately $17,000 after approximately eighteen months of conservative treatment that is allegedly ongoing, one ESI, a recommendation for future ESIs, and state court damages awards for allegedly similar injuries.[41]

Beginning with the newly provided medical records, Plaintiff's primary medical issues involve neck, back, and elbow pain, including three herniated and three bulging lumbar/cervical discs, some of which were pre-existing.[42] Plaintiff did not seek treatment on the day of the Accident, but instead visited an urgent care clinic the next day, where x-rays of her elbow and

---

the court granted plaintiff's motion to remand even when plaintiff alleged that she sustained severe and possibly permanent injuries, because her allegations were 'fairly 'vanilla'' and did not reveal the extent of her injuries. Mrs. Heaverlo's allegations are similarly commonplace. Given the accident described in the petition and the lack of evidence as to plaintiffs' likely damages, the Court finds that defendants have not satisfied their burden of showing by a preponderance of the evidence that more than $75,000 was in controversy at the time of removal.").

[40] *Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000), citing *Simon*, 193 F.3d at 851. *See also Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at *3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages. Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Ins. Co.*, No. 17-414, 2017 WL 5762436, at *3 (M.D. La. Aug. 24, 2017) ("'Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test.'"), quoting *Davis*, 2012 WL 278728, at * 3.

[41] R. Doc. 6, pp. 2-7.

[42] R. Docs. 6-3, 6-4, and 6-5.

shoulder revealed no abnormalities.  Plaintiff was given pain medication and discharged.[43]  Two

and half months later, Plaintiff began attending physical therapy for back and elbow pain with

Metropolitan Health Group, which continued until December 1, 2020.[44] During this time, Plaintiff

also received treatment and medication for her back pain from Orthopedic Care Center of

Louisiana ("OCC") on five occasions and MRIs of her lumbar and cervical spine were taken by

LA MRI, Inc.[45]  When compared to an April 5, 2018 MRI, the cervical MRI revealed that Plaintiff

had two pre-existing bulging discs, a pre-existing herniated disc, and one new herniated disc.[46]

The lumbar MRI revealed one bulging and one herniated disc.[47]  OCC recommended cervical and

lumbar ESIs.[48]  Plaintiff then visited Louisiana Pain Specialists ("LPS") on two occasions and

underwent a lumbar ESI.[49] At Plaintiff's second LPS visit on August 18, 2021, which is the most

recent medical record submitted, LPS recommended a cervical ESI; however, there is no evidence

that Plaintiff had the procedure.[50]

      While the new records reflect that Plaintiff has reported constant pain in her lower back,

usually rated a "7" or "8" on a scale of 10, they also reflect that Plaintiff's pain and symptoms

improved with physical therapy and are managed with medication. Specifically, Plaintiff engaged

in approximately nineteen physical therapy sessions from August 11, 2020 until December 1,

2020, during which time Plaintiff's stiffness and pain decreased and her lower back pain

"improv[ed] steadily."[51]  In April of 2021, Plaintiff reported to OCC that her pain "gets better by

---

[43] R. Doc.6-2 and *see* the account summary at R. Doc. 6-1, p. 6.
[44] R. Doc. 6-3.
[45] R. Doc. 6-4 and *see* the OCC statement at R. Doc. 6-1, p. 2.  The statement reflects five visits, but there are only treatment records of two visits. R. Doc. 6-4.  *See also* the LA MRI statement at R. Doc. 6-1, p. 8.
[46] R. Doc. 6-4, pp. 6-7.
[47] R. Doc. 6-4, pp. 8-9.
[48] R. Doc. 6-4, p. 4.
[49] R. Doc. 6-5, and *see* the patient ledger at R. Doc. 6-14, p. 7.
[50] R. Doc. 6-5, p. 4.  Plaintiff's OCC and LPS records do not reflect any complaints of elbow pain.  *Compare* R. Doc. 6-3 *with* R. Doc. 6-4 and  6-5.  These records also reflect that Plaintiff reported having pre-existing neck pain due to a motor vehicle accident in 2017, which was aggravated by the Accident.  R. Doc. 6-4, p. 1, and R. Doc. 6-5, p. 9.
[51] R. Doc. 6-3, pp. 12-13, 15-18, 22.

physical therapy, applying cold and applying heat."[52] By August 18, 2021, Plaintiff reported that, while she continued to experience back pain, "medication does help," and physical therapy was also helping.[53]   The LPS records state: "Patient reports that her pain is well controlled with prescribed medications.  States that her pain is relieved by 30% by taking medications.  Patient reports that her current functional level is much improved with medication.  States that her quality of sleep is fair….She described her mood as good."[54]

Significantly, there was no recommendation for surgery at the time of removal, nor is there a surgical recommendation in the additional medical records submitted. Plaintiff's injuries and treatment, even as documented in the records, are not sufficient evidence to meet the jurisdictional threshold, particularly considering that Plaintiff's documented past medical expenses for fifteen months of conservative treatment, *i.e.*, physical therapy and one ESI, amount to only about $16,877.[55]   There is ample authority from this Court and others in this Circuit that removing defendants failed to establish the jurisdictional threshold when alleging similar injuries, treatment, and medical expenses.  As noted in *Cole v. Mesilla Valley Transportation*: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal."[56] Even for herniated

---

[52] R. Doc. 6-5, p. 9.

[53] R. Doc. 6-4, p. 4.

[54] R. Doc. 6-5, p. 1.  This August 18, 2021 record somewhat contradicts Plaintiff's discovery responses (served about one month later) regarding her symptoms, *i.e.*, that she cries frequently and has trouble sleeping.  R. Doc. 1-4, p. 2.

[55] The additional medical records provided with the Memorandum reflect this amount. R. Doc. 6-1. In the parties' December 23, 2021 Status Report, Plaintiff quantified her medical expenses to be $20,383.40, but did not provide documentation supporting this amount.  R. Doc. 10, p. 2. The discrepancy in medical expenses incurred is minor and does not impact the analysis in this Report.

[56] No. 16-841, 2017 WL 1682561, at *5 (M.D. La. Mar. 15, 2017), *report and recommendation adopted,* No. 16-841, 2017 WL 1684515 (M.D. La. May 1, 2017)., 2017 WL 1682561, at *5, citing *Barrow v. James River Insurance Company*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546,

discs, "[t]his court recognizes that "[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[57] "Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[58]

Notably, this Court recently decided *Hill v. DG Louisiana*,[59] a case that is directly on-point, also involves DG Louisiana and its current counsel, and which rejected many of the same arguments DG Louisiana now asserts in support of the amount in controversy. In *Hill*, the plaintiff asserted injuries of low back and knee pain, lumbosacral facet joint syndrome, sacroiliitis, three herniated discs, and multiple bulging discs. She treated for about twenty months, had undergone three transforaminal ESIs, and was pending a fourth transforaminal ESI but had no surgery

2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annual cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with resultant mild central canal stenosis and bilateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed).

[57] *Thomas v. Louis Dreyfus Commodities, LLC*, No. 15-394, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted*, No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016), citing *Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted*, 2011 WL 2937952 (M.D. La. July 14, 2011).

[58] *Thomas*, 2016 WL 1317937 at *4. *See also id.*, citing *Hebert v. Hanco Nat. Ins. Co.*, No. 07–362, 2009 WL 255948, at **4–5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'). *See also Espadron v. State Farm Mut. Auto. Ins. Co.*, No. 10–53, 2010 WL 3168417, *3 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiffs in car crash suffered 'herniated cervical disc [or] segmental cervical instability' and/or 'herniated lumbar disc [or] segmental lumbosacral instability' and were 'potential surgical candidates' and plaintiffs stipulated that their damages did not individually exceed $50,000).

[59] No. 21-325, 2022 WL 3146554, at **5-8 (M.D. La. July 1, 2022), *report and recommendation adopted*, No. 21-325, 2022 WL 3142339 (M.D. La. Aug. 5, 2022).

11

recommendation. Despite nearly two years of treatment, the plaintiff's incurred and/or expected medical expenses were only $22,265, including $16,501 in incurred medical expenses. This Court held that the foregoing (and DG Louisiana's litany of state court damage awards) was insufficient to sustain its burden of showing the amount in controversy was met.[60]  Like Plaintiff in this case, the *Hill* plaintiff had about $16,500 in past medical expenses, provided vague discovery responses regarding her damages, and was also not seeking lost wages.[61]  However, the *Hill* plaintiff had more injuries and treatment than Plaintiff in this case over a longer documented period of time, which this Court found insufficient to meet the jurisdictional minimum.

Similar to its arguments in *Hill*, DG Louisiana also argues that the amount in controversy is met based on ranges of general damages awards for allegedly similar neck, back, and elbow injuries, relying on this Court's review of state court quantum cases in *Cole* and *West v. Red Frog Events*, *LLC,* as well as nine other state court cases.[62]  DG Louisiana's reliance is misplaced. Despite the review of quantum awards in *Cole* (which awards are not dispositive or persuasive, *see* below), this Court ultimately found that the removing defendant failed to establish that the amount in controversy was likely met based on the low amount of the plaintiff's past medical expenses ($7,318, not including the cost of an MRI), several disc bulges, a  recommendation for an ESI, and no summary judgment evidence of lost wages, similar to Plaintiff in this case.[63] Although here Plaintiff has additional considerations, including higher medical expenses and

---

[60] *Hill,* 2022 WL 3146554, at **5-8.

[61] *Hill,* 2022 WL 3146554, at *7 (not seeking lost wages and vague responses to requests regarding damages).

[62] R. Doc. 6, pp. 4-7 citing *Cole*, 2017 WL 1682561 at *5 and *West v. Red Frog Events, LLC*, No. 17-1640, 2018 WL 4376481 (M.D. La. July 24, 2018) *report and recommendation adopted,* No. 17-1640, 2018 WL 4373699 (M.D. La. Sept. 13, 2018).

[63] 2017 WL 1682561 at *6.  The *Cole* Court also noted that, "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal." (citations omitted).  Plaintiff's documented medical expenses in this case are not appreciably higher than $15,000.

herniated discs, those considerations are still not sufficient to reach the jurisdictional threshold for the reasons discussed previously.

Next, *Hill* rejected DG Louisiana's assignment of $2,625 per month for soft tissue injuries purportedly extrapolated from *West*, and its reliance on a range of damage awards, as supportive of the jurisdictional minimum.[64]  The significance of *West* was not the reference to a state court damage award; rather, it was that remand was recommended because the removing defendant failed to provide sufficient information regarding the plaintiff's injuries. As such, it was impossible to tell if the cases cited by the defendant involved general damage awards for analogous injuries.[65] As applicable to the instant case, *West* held:

> As recently noted by the Eastern District, 'the defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000.' The cases cited by Red Frog 'merely exemplify amounts in damages within the realm of possibilities that Plaintiff could recover, and to that end, '[t]he Fifth Circuit has explained a 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely than not' standard.'[66]

Finally, DG Louisiana's reliance on a list of state court cases to establish quantum for Plaintiff's cervical injuries fails, as it failed in *Hill*,[67] because each of the cited cases was tried.[68] There cannot be a meaningful comparison of this case to those cases for the purposes of determining whether the jurisdictional threshold is met because the relevant information regarding

---

[64] *Hill,* 2022 WL 3146554, at *3, n. 31, and *7.
[65] *West,* 2018 WL 4376481 at **5-6 (and citing *Moraus v. Frederick*, 2005-429 (La. App. 3 Cir. 11/2/05), 916 So. 2d 474).
[66] *West*, 2018 WL 4376481, at *6, citing *Medina v. Johnstone*, No. 17-6351, 2017 WL 3911793, at *4 (E.D. La. Sept. 7, 2017) (other citation omitted).
[67] *Hill,* 2022 WL 3146554, at *7.
[68] R. Doc. 6, p. 7, n. 41 citing, *e.g., Lohenis v. Rousse,* 2014-1078 (La. App. 1 Cir. 3/9/15), 166 So. 3d 1020 (other citations omitted), the only cited Louisiana appellate court case located in this district.

Plaintiff's injuries and damages is unknown.[69] DG Louisiana "must do more than merely show that plaintiff could recover more than the jurisdictional amount" to satisfy its burden.[70] "The Defendant must point to facts **in this case** that establish that the actual amount in controversy exceeded $75,000."[71] The reasons supporting the *sua sponte* recommendation for remand in *Hill* apply equally here.[72]

In summary, the evidence submitted in this case in support of subject matter jurisdiction shows Plaintiff has undergone only conservative treatment totaling less than $17,000, which helps manage her symptoms.[73] There is no surgical recommendation for an accident that occurred over a year before the case was removed, and no evidence of treatment after August 18, 2021. While the Petition demands lost wages and loss of earning capacity, Plaintiff is not pursuing a claim for

---

[69] *See Silva v. Hartford Ins. Co. of the Midwest,* No. 15-5844, 2016 WL 4501288, at *5 (E.D. La. Aug. 29, 2016)("Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement.").
[70] *Silva,* 2016 WL 4501288, at *5. *See also Barrow,* 2017 WL 656725, at *3 (accord).
[71] *Id.* (emphasis added).
[72] It is concerning that DG Louisiana does not address, much less distinguish, this Court's precedent in *Hill* and why a different result should be reached here, notwithstanding that DG Louisiana was also a party in that case, represented by the same law firm. Notably, DG Louisiana did not object to the Report and Recommendation for *sua sponte* remand in *Hill*. It is a waste of judicial resources for this Court to repeatedly address the same meritless removal arguments asserted by the same litigants in cases involving similar facts. DG Louisiana will be required to distinguish this case and the *Hill* case in future removals involving plaintiffs with similar, nonsurgical injuries and low to modest medical expenses. DG Louisiana is reminded that 28 U.S.C. § 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."
[73] *See Cole,* 2017 WL 1682561, at *5, and cases cited and discussed, *supra.* The parties' July 7, 2022 Amended Status Report states: "….Plaintiff is still receiving medical treatment for injuries she asserts were caused by the accident that is the subject of this litigation and because Plaintiff was recently diagnosed with a serious medical condition requiring emergent surgery and intense follow-up treatments." R. Doc. 13, p. 1. While "summary judgment-type evidence" can be used to support removal (*see Manguno,* 276 F.3d at 723 (citations omitted)), counsel's arguments or statements in brief or in reports are not "summary judgment-type evidence."

lost wages and was unemployed at the time of the Accident, like the *Hill* plaintiff.[74] The cases upon which DG Louisiana relies are distinguishable or cannot be effectively compared to this case, and Plaintiff's discovery response regarding her damages is vague. Under these facts, DG Louisiana has not born its burden to establish the Court's subject matter jurisdiction.[75] Any doubt as the existence of subject matter jurisdiction is resolved in favor of remand.[76] Accordingly, *sua sponte* remand of this case to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction is recommended.[77]

## III.    RECOMMENDATION

**IT IS RECOMMENDED** that this matter be *sua sponte* **REMANDED** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, December 30, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[74] R. Doc. 1-4, pp. 6, 9 and *see Hill,* 2022 WL 3146554, at *7.  The physical therapy records reflect that Plaintiff was unemployed as the result of the COVID-19 quarantine, not because of her injuries.  R. Doc. 6-3, pp. 2, 5, 8.

[75] "Because Defendant has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount."  *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

[76] *Gasch*, 491 F.3d at 281-82.  *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

[77] No party has argued that there is federal question jurisdiction under 28 U.S.C. § 1331 and it does not appear that there would be such jurisdiction for claims arising from this slip and fall accident.